Opinion
 

 MOSK, J.
 

 Milk and milk products constitute an important source of nutrition for the people of the State of California, supplying various essential nutrients. They also amount to a substantial economic resource, since the state’s dairy industry, which is the nation’s largest, is the state’s leading agricultural enterprise. .
 

 The cause before us involves milk, in the form commonly called whole milk, and milk products, in the forms commonly called lowfat milk and skim milk, and the interplay of the laws of the United States and those of the State of California as they apply thereto.
 

 We granted review to resolve an issue concerning certain statutory provisions relating to whole milk, lowfat milk, and skim milk, specifically, state
 
 *418
 
 provisions that are more stringent and federal provisions that are less stringent.
 

 The question is whether the more stringent state provisions alone apply or whether the less stringent federal provisions are applicable as alternatives.
 

 The answer, as we shall explain, is that the more stringent state provisions alone apply.
 

 I
 

 The Federal Food, Drug, and Cosmetic Act (Act of June 25, 1938, ch. 675, § 1 et seq., 52 Stat. 1040 et seq.) was enacted by Congress in 1938, has subsequently been amended, and is codified at section 301 et seq. of title 21 of the United States Code. It provides for the establishment of standards of identity, labeling requirements, etc., for various foods in interstate commerce, including milk and milk products. A standard of identity generally defines a food and lists its components, and hence is sometimes referred to as a standard of composition to the extent that it contains both the definition and the list. The statute is implemented by regulations promulgated by the Secretary of Health and Human Services through the Commissioner of Food and Drugs, which are codified in title 21 of the Code of Federal Regulations.
 

 The Milk and Milk Products Act of 1947 was enacted in the year indicated (Stats. 1947, ch. 939, § 4 et seq., p. 2164 et seq.), was given its title in 1967 (Stats. 1967, ch. 15, § 2, p. 360 et seq.), has subsequently been amended, and is codified at section 32501 et seq. of the Food and Agricultural Code. It establishes standards of identity, labeling requirements, etc., for milk and milk products in California. It makes it “unlawful for any person” to “sell” or “deliver” any milk or milk product that “does not conform” to its provisions. (Food & Agr. Code, § 32901.) It declares that a “person shall not make or cause to be made any statement... in connection with” the sale or delivery of any milk or milk product that “is false, deceptive, or misleading in any manner.”
 
 {Id..,
 
 § 32914.)
 

 Regulations implementing the Federal Food, Drug, and Cosmetic Act establish a standard of identity for whole milk (21 C.F.R. § 131.110 (2000)), and through 1997, which includes the period pertinent here, established standards of identity for lowfat milk
 
 {id.,
 
 former § 131.135 (1997)) and skim milk
 
 {id.,
 
 former § 131.143 (1997)) as well. Whole milk, lowfat milk, and skim milk are each essentially composed of water, milkfat, and nonfat milk solids, each carrying its nutrients, including calories, fat, cholesterol, sodium, carbohydrates, protein, vitamins, and calcium and other minerals, in
 
 *419
 
 its milkfat and nonfat milk solids. The federal standards of identity effectively set the maximum and/or minimum percentages of water, milkfat, and nonfat milk solids.
 

 For its part, the Milk and Milk Products Act of 1947 establishes standards of identity for whole milk (Food & Agr. Code, § 35784), lowfat milk
 
 (id.,
 
 §§ 38191 [1 percent fat milk], 38211 [2 percent fat milk]), and skim milk
 
 (id.,
 
 § 38181). Again, whole milk, lowfat milk, and skim milk are each essentially composed of wáter, milkfat, and nonfat milk solids, each carrying its nutrients in its milkfat and nonfat milk solids. The state standards of identity are like the federal standards in effectively setting the maximum and/or minimum percentages of water, milkfat, and nonfat milk solids. The state standards of identity are unlike the federal standards in the percentages that they set. Among other things, the state standards of identity require a higher percentage of nonfat milk solids than the federal standards—generally resulting, for example, in a higher percentage of protein and calcium, sometimes substantially so. Usually, such higher percentage does not occur naturally, but must be achieved through addition. The state standards of identity are more stringent than the federal standards. They date back almost 40 years to their ultimate source. (See Stats. 1961, ch. 2126, § 1, p. 4386.)
 

 The Nutrition Labeling and Education Act of 1990 (hereafter the NLEA) (Pub.L. No. 101-535, § 1 et seq. (Nov. 8, 1990) 104 Stat. 2353 et seq.), which was enacted by Congress in the year indicated, has subsequently been amended, and is codified in section 343-1 et al. of title 21 of the United States Code. It deals with standards of identity, labeling requirements, etc., for foods in interstate commerce. In section 6(a), as amended and codified in section 343-1(a) of title 21, the act declares a rule of preemption: A state may not “directly or indirectly” “establish” or “continue in effect” any standard of identity, labeling requirement, etc., for (practically) any food in interstate commerce that “is not identical to” a federal counterpart, if one exists. Also in section 6(a), codified in section 343-1(b) of title 21, the act provides for an exception to its rule of preemption: The Secretary of Health and Human Services may administratively “exempt” a state therefrom upon its petition. By the act’s term, the rule of preemption does not apply, and an exception is not needed, to the extent that any food is
 
 not
 
 in interstate commerce. (See 58 Fed.Reg. 2462 (Jan. 6, 1993).)
 

 Through the Director of the Department of Food and Agriculture—who is now styled the Secretary of Food and Agriculture (Food & Agr. Code, § 50)—the State of California, in 1990, filed a petition for administrative exemption from the NLEA’s rule of preemption covering the less stringent federal standards of identity for whole milk, lowfat milk, and skim milk,
 
 *420
 
 and, in 1993, filed a superseding petition to the same effect, in which it expressly declined to seek exemption from the rule of preemption covering federal labeling nomenclature.
 

 Before the Secretary of Health and Human Services acted on the State of California’s petition for administrative exemption, the Federal Agriculture Improvement and Reform Act of 1996 (hereafter FAIRA) was enacted by Congress, effective April 4, 1996. (Pub.L. No. 104-127, § 1 et seq. (Apr. 4, 1996) 110 Stat. 888 et seq.) In section 144 of FAIRA, which is codified at section 7254 of title 7 of the United States Code, Congress granted the State of California alone a statutory exemption from, inter alia, the federal standards of identity for whole milk, lowfat milk, and skim milk, declaring that “[n]othing in . . . any . . . provision of law”—including the NLEA—“shall be construed to preempt, prohibit, or otherwise limit the authority of the State of California, directly or indirectly, to establish or continue to [sic: in?] effect any law, regulation, or requirement regarding,” among other things, standards of identity for whole milk, lowfat milk, and skim milk. (See generally
 
 Shamrock Farms Co. v. Veneman
 
 (9th Cir. 1998) 146 F.3d 1177, 1180-1182.)
 

 II
 

 On July 24, 1996, the People of the State of California, by the Attorney General, then Daniel E. Lungren and now Bill Lockyer, brought this action in the Superior Court of San Diego County against Shamrock Foods Company, under section 17200 et seq. of the Business and Professions Code, the so-called unfair competition law
 
 (Stop Youth Addiction, Inc. v. Lucky Stores, Inc.
 
 (1998) 17 Cal.4th 553, 558, fn. 2 [71 Cal.Rptr.2d 731, 950 P.2d 1086]), for violations of the Milk and Milk Products Act of 1947 with respect to whole milk, lowfat milk, and skim milk.
 

 By way of complaint, the People made allegations, in pertinent part, to the following effect: Shamrock is an Arizona corporation with offices in San Diego County; on and after April 5, 1996—the day after FAIRA became effective—it sold and delivered whole milk, lowfat milk, and skim milk that did not meet the state standards of identity, and made, or caused to be made, statements in connection therewith that were false, deceptive, or misleading because it failed to disclose that these foods did not meet these standards; in so doing, it victimized elderly and/or disabled persons; and, in its activities in the marketplace, it generally engaged in unfair competition, to the detriment of consumers and others. On the basis of such allegations, the People sought relief in the form of civil penalties and preliminary and permanent injunctions.
 

 
 *421
 
 In answering the complaint, Shamrock set out an affirmative defense that would take this form: Section 32912 of the Food and Agricultural Code (hereafter sometimes section 32912), one of the provisions of the Milk and Milk Products Act of 1947, adopted the less stringent federal standards of identity for milk and milk products, including whole milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards; Shamrock’s whole milk, lowfat milk, and skim milk met the former if not the latter.
 

 On the People’s motion, the superior court issued a preliminary injunction prohibiting Shamrock from violating the Milk and Milk Products Act of 1947 by selling or delivering any whole milk, lowfat milk, or skim milk that did not meet its state standard of identity.
 

 Trial was to the superior court without a jury. The People and Shamrock disputed whether section 32912 adopted the less stringent federal standards of identity for milk and milk products, including whole milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards. They also disputed whether Shamrock had violated the preliminary injunction, and if so, whether it had done so intentionally. They did not dispute, however, that Shamrock’s whole milk, lowfat milk, and skim milk met the federal standards of identity: All the evidence was that they did. Neither did they dispute that Shamrock’s whole milk, lowfat milk, and skim milk did
 
 not
 
 meet the state standards of identity: Shamrock admitted that they did not.
 

 In a statement of decision following trial, the superior court made findings of fact and conclusions of law favorable to the People and unfavorable to Shamrock. Among which were these: Section 32912 did not adopt the less stringent federal standards of identity for milk and milk products, including whole milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards; Shamrock violated the Milk and Milk Products Act of 1947 by selling and delivering whole milk, lowfat milk, and skim milk that did not meet the state standards of identity, and by failing to disclose the fact that they did not; and it had intentionally violated the preliminary injunction by violating the act by selling and delivering whole milk, lowfat milk, and skim milk of this sort. Alongside its statement of decision, the superior court expressed an underlying view to the effect that, in its activities in the marketplace, Shamrock conducted itself in bad faith solely to serve its own interests, and that, in this action, its position was altogether unsupported in either law or fact.
 

 The superior court rendered judgment for the People and against Shamrock, and caused entry thereof: It permanently enjoined Shamrock from selling or delivering any whole milk, lowfat milk, or skim milk that did not
 
 *422
 
 meet its state standard of identity; it ordered Shamrock to pay civil penalties in the amount of $696,000, comprising $240,000 for violating the Milk and Milk Products Act of 1947 and $456,000 for intentionally violating the preliminary injunction; and it ordered Shamrock to pay the People’s costs in the amount of $3,563.
 

 After Shamrock filed a notice of appeal in the superior court, an appeal was docketed in the Court of Appeal for the Fourth Appellate District, and was assigned to Division One.
 

 By a judgment announced in a unanimous opinion certified for publication, the Court of Appeal reversed the judgment of the superior court. Shamrock had presented several claims. The Court of Appeal reached only one. It subjected to independent review the superior court’s construction of section 32912. It proceeded to reject it out of hand. It concluded that the “plain meaning” of section 32912 demonstrated that the provision did indeed adopt the less stringent federal standards of identity for milk and milk products, including whole milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards. It then stated that it found “nothing” in the “legislative history” of the bill that added section 32912 that “contradict[ed]” its “conclusion concerning” the provision’s “plain meaning.” Inasmuch as it was not disputed that Shamrock’s whole milk, lowfat milk, and skim milk met the federal standards of identity, it determined that the superior court’s judgment was unsupported as a matter of law.
 

 The People filed a petition for review.
 
 [1]
 
 We granted the application. We now reverse.
 

 Ill
 

 The issue that we address on review concerns the proper construction of section 32912, one of the provisions of the Milk and Milk Products Act of 1947.
 
 [2]
 

 The question is: Does section 32912 adopt the less stringent federal standards of identity for milk and milk products, including whole milk,
 
 *423
 
 lowfat milk, and skim milk, as alternatives to the more stringent state standards?
 

 The answer, as we shall explain, is: No.
 
 [3]
 

 Section 32912 provides: “Any milk or milk product. . . that is subject to a standard of identity or standard of composition defined in” the Milk and Milk Products Act of 1947 “may be specially formulated or processed to lower the content of its milkfat, alter its milkfat composition, or otherwise modify its nutrient profile to the extent that it will not comply with the compositional requirements of its standard of identity or composition. These modified foods shall be labeled in accordance with the applicable provisions of Title 21 of the Code of Federal Regulations.” Here, as elsewhere, the phrase “standard of composition” is a descriptive variant of “standard of identity” insofar as it both defines a food and lists its components. (See Food & Agr. Code, §§ 18731, 18784.)
 

 Section 32912 was added by Assembly Bill No. 444 (1993-1994 Reg. Sess.) (hereafter sometimes Assembly Bill No. 444), in place of an older version with the same number, which dealt with labeling requirements for “milk product[s]” and “product[s] resembling . . . milk produces]” (Stats. 1977, ch. 437, § 1, pp. 1472-1473). The bill’s life-span fell within the pendency of the state’s 1993 petition for administrative exemption from the NLEA’s rule of preemption covering the less stringent federal standards of identity for whole milk, lowfat milk, and skim milk, but not federal labeling nomenclature. The bill was mentioned in the petition as a measure “to bring . . . state [labeling] nomenclature into line with” federal.
 

 Assembly Bill No. 444 was sponsored, and drafted, by the Dairy Institute of California, which did
 
 not
 
 favor the establishment of the less stringent federal standards of identity for milk and milk products, including whole
 
 *424
 
 milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards.
 

 As introduced, Assembly Bill No. 444 would have changed existing law in a single way, by modifying state labeling nomenclature for one form of lowfat milk. (Assem. Bill No. 444 (1993-1994 Reg. Sess.) as introduced Feb. 11, 1993, § l,p. 1.)
 

 As amended, Assembly Bill No. 444 would have changed existing law in additional ways. It would have repealed state standards of identity for specified milk products—but
 
 not
 
 whole milk, lowfat milk, or skim milk— and would have added federal standards in their place through cross-reference. (Sen. Amend, to Assem. Bill No. 444 (1993-1994 Reg. Sess.) Mar. 24, 1994, §§ 7-24, 26-46, pp. 8-13, 14-17.) For example, it would have repealed the state standard of identity for sherbet—“Sherbet is a frozen product which contains milk or products of milk,” and “may contain” “approved” “sweetening, harmless flavoring, and coloring” (Food & Agr. Code, § 36951, as enacted by Stats. 1967, ch. 15, § 2, p. 417)—and would have added the federal standard in its place through cross-reference—“Sherbet is a food that complies with Section 135.140 of Title 21 of the Code of Federal Regulations” (Sen. Amend, to Assem. Bill No. 444 (1993-1994 Reg. Sess.) Mar. 24, 1994, § 16, p. 9). It would also have added section 32912 in its present form, with the substantive exception that the provision would have covered “[a]ny milk product” (Sen. Amend, to Assem. Bill No. 444 (1993-1994 Reg. Sess.) Mar. 24, 1994, § 2, p. 4) and not “[a]ny
 
 milk or
 
 milk product” (Food & Agr. Code, § 32912).
 

 As further amended, Assembly Bill No. 444 would have changed existing law in one additional way. It would have added section 32912 in its present form, covering “[a]ny milk or milk product.” (Sen. Amend, to Assem. Bill No. 444 (1993-1994 Reg. Sess.) May 5, 1994, § 2, p. 3.)
 

 As so amended, Assembly Bill No. 444 was enacted. (Stats. 1994, ch. 95, § 1 et seq.)
 

 The meaning of the first of Assembly Bill No. 444’s three cited changes— the modification of
 
 state labeling nomenclature
 
 for one form of lowfat milk—is plain from what it effected. It conformed state labeling nomenclature to federal. It did
 
 not,
 
 however, conform any state standard of identity for any milk or milk product to any federal standard, including that for the form of lowfat milk in question: It did not even purport to affect any such standard of identity in any way. Indeed, from all that appears, it conformed state labeling nomenclature to federal in order
 
 not
 
 to conform the more stringent
 
 *425
 
 state standards of identity for whole milk, lowfat milk, and skim milk to the less stringent federal standards. Or more precisely, it conformed state labeling nomenclature to federal in order to “enhance[]” the “likelihood of favorable federal action” on the state’s 1993 petition for administrative exemption from the NLEA’s rule of preemption, which did not cover federal labeling nomenclature. (Sen. Com. on Agr. and Wat. Resources, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as introduced Feb. 11, 1993, p. 1; accord, Sen. Com. on Agr. and Wat. Resources, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended Mar. 24, 1994, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended Mar. 24, 1994, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, p. 2.)
 

 The meaning of the second of Assembly Bill No. 444’s three cited changes—the repealing of state standards of identity
 
 for specified milk products
 
 and the adding of federal standards in their place through cross-reference—is also plain from what it effected. It conformed the state standards of identity
 
 for those specified foods
 
 to the federal standards. It did
 
 not,
 
 however, conform the state standard of identity
 
 for whole milk, lowfat milk, or skim milk
 
 to the federal standard: It simply did not even touch on the standard of identity
 
 for any of these foods.
 

 Not plain, at least at first glance, is the meaning of the third of Assembly Bill No. 444’s three cited changes—the addition of section 32912.
 

 Considered in isolation, section 32912 presents more questions than answers. How should we understand the provision’s first sentence? “Any milk or milk product. . . that is subject to a standard of identity” established in the Milk and Milk Products Act of 1947 “may be specially formulated or processed to . . . modify its nutrient profile to the extent that it will not comply with the compositional requirements of its standard of identity . . . .” (Food & Agr. Code, § 32912.) Even if we take the awkward clause allowing modification of any milk or milk product “to the extent that it will not comply with ... its standard of identity,” as we evidently ought, to carry the sense “so as not to comply” therewith, we are still left to wonder: How far may the modification extend? For example, to removing
 
 all
 
 milkfat and
 
 all
 
 nonfat milk solids from whole milk, with only water remaining? Next, how should we understand the provision’s second sentence? “These modified foods shall be labeled in accordance with the applicable provisions of Title 21 of the Code of Federal Regulations.”
 
 (Ibid.)
 
 Title 21 contains provisions relating to labeling in both its formal aspects, dealing with appearance, and its substantive aspects, dealing with content. Which come into play? Formal? Substantive? Both?
 

 
 *426
 
 Considered in context, however, section 32912 presents answers to all of its questions.
 

 Part 130.10 of title 21 of the Code of Federal Regulations (hereafter sometimes part 130.10) was the model for section 32912. By its own terms, part 130.10 does two things: (1) it prescribes a “general . . . standard of identity” for any “food[] that substitute[s] . . . for a standardized food . . . and . . . use[s] the name of that standardized food . . . but. . . do[es] not comply with [its] standard of identity because of a deviation that is described” by a “nutrient content claim” defined in title 21 (21 C.F.R. former § 130.10(a) (1993); accord, 21 C.F.R. § 130.10(a) (2000)), such as “fat free,” “low calorie,” or “light” (58 Fed.Reg. 2431 (Jan. 6, 1993)); and (2) it requires the labeling of any such substitute food in conformity with both the “name of [the] standardized food” and also the defined “nutrient content claim” (21 C.F.R. former § 130.10(a) (1993); accord, 21 C.F.R. § 130.10(a) (2000)). In other words, part 130.10 “prescribe^] a general. . . standard of identity” for substitute foods “named by use of’ a defined “nutrient content claim ... in conjunction with a traditional standardized name,” and requires conforming labeling therefor. (58 Fed.Reg. 2431 (Jan. 6, 1993).)
 

 The purpose underlying part 130.10 is to “provid[e] for modified versions of certain standardized foods that bear descriptive names that are meaningful to . . . consumers” (58 Fed.Reg. 2431 (Jan. 6, 1993)) without the “time-consuming and unnecessarily wasteful” “promulgation of a large number of individual” standards of identity and labeling requirements (56 Fed.Reg. 60517 (Nov. 27, 1991)). The purpose is
 
 not
 
 to adopt alternative standards of identity, whether more or less stringent. Indeed, part 130.10 fails to refer to alternative standards of identity of any kind.
 

 Read in light of part 130.10, on which it was modeled, section 32912 may similarly be understood to do two things: (1) to prescribe a general standard of identity for any milk or milk product that substitutes for, and uses the name of, a standardized milk or milk product, but that deviates from the latter’s standard of identity as indicated in a defined nutrient content claim; and (2) to require the labeling of any such substitute milk or milk product in conformity with both the name of the standardized milk or milk product and also the applicable nutrient content claim.
 

 It is true that section 32912 does not provide thus in express terms. But it does so by implication.
 

 First, section 32912 prescribes a
 
 general standard of identity.
 
 It covers
 
 “[a]ny
 
 milk or milk product . . . that is subject to a standard of identity”
 
 *427
 
 established in the Milk and Milk Products Act of 1947, and not a specific milk or milk product subject to a specific standard of identity. (Food & Agr. Code, § 32912, italics added.) For certain milk products, the standards of identity established in the act, through cross-reference, are federal standards. For whole milk, lowfat milk, and skim milk, however, the standards of identity established in the act, solely according to its own terms, are strictly state standards.
 

 Second, section 32912 concerns itself with
 
 substitutes for a standardized milk or milk
 
 product—somewhat like its predecessor, which dealt in part with “product[s]
 
 resembling . . .
 
 milk product[s]” (Stats. 1977, ch. 437, § 1, pp. 1472-1473, italics added). It characterizes the “milk” or “milk product” in question broadly as “modified.” (Food & Agr. Code, § 32912.) It characterizes it more narrowly as “specially formulated or processed to . . . modify its nutrient profile.”
 
 (Ibid.)
 
 It does not define the phrase “nutrient profile”—which occurs only here in the Milk and Milk Products Act of 1947 and, indeed, only here in all of California statutory law. The phrase, however, suggests its own definition, namely, a mix including calories, fat, cholesterol, sodium, carbohydrates, protein, vitamins, and calcium and other minerals.
 

 Third, section 32912 deals with any covered substitute milk or milk product
 
 that uses the name of a standardized milk or milk product.
 
 It does not itself provide for any such name, which must be obtained elsewhere in the Milk and Milk Products Act of 1947, as for “sherbet” (Food & Agr. Code, § 36951).
 

 Fourth, section 32912 likewise deals with any covered substitute milk or milk product
 
 that deviates from the standard of identity for the standardized milk or milk product as indicated in a defined nutrient content claim.
 
 It cannot reasonably be deemed to allow any and all deviation. Otherwise, it would tolerate, for example, the removal of
 
 all
 
 milkfat and
 
 all
 
 nonfat milk solids from whole milk, with only water remaining—an untenable result. Rather, it must reasonably be taken to allow only such deviation as indicated in a nutrient content claim
 
 that is defined in title 21 of the Code of Federal Regulations,
 
 to which it refers.
 

 Fifth and final, section 32912 requires the labeling of any covered substitute milk or milk product
 
 in conformity with both the name of the standardized milk or milk product and also the applicable nutrient content claim
 
 —somewhat like its predecessor, which dealt, inter alia, with labeling requirements for “product[s] resembling . . . milk produces]” (Stats. 1977, ch. 437, § 1, pp. 1472-1473). It mandates that a covered substitute milk or
 
 *428
 
 milk product must be “labeled in accordance with the applicable provisions of Title 21 of the Code of Federal Regulations” (Food & Agr. Code, § 32912), which themselves mandate the labeling of a covered substitute food in conformity with both the name of the standardized food and also the applicable nutrient content claim.
 

 The purpose underlying section 32912 is like that underlying part 130.10, which, as stated, is to “provid[e] for modified versions of certain standardized foods that bear descriptive names that are meaningful to . . . consumers” (58 Fed.Reg. 2431 (Jan. 6, 1993)) without the “time-consuming and unnecessarily wasteful” “promulgation of a large number of individual” standards of identity and labeling requirements (56 Fed.Reg. 60517 (Nov. 27, 1991)). (See Assem. Com. on Agr., Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, p. 2.)
 

 The purpose underlying section 32912 is
 
 not
 
 to adopt alternative standards of identity, whether more or less stringent. Section 32912 fails to refer to alternative standards of identity of any kind. It could readily have done so, as through cross-reference: For illustration, “Any milk or milk product . . . that is subject to a standard of identity” established in the Milk and Milk Products Act of 1947 “may be specially formulated or processed to comply with the analogous standard of identity of Title 21 of the Code of Federal Regulations.” But the fact is, section 32912 simply makes no reference whatsoever to any alternative standard of identity. It cannot reasonably be treated as though it did. Indeed, so far as whole milk, lowfat milk, and skim milk are concerned, it cannot even conceivably be thought to implicate any
 
 federal
 
 standard of identity of any sort. For certain milk products, the standards of identity that section 32912 allows deviation from, albeit only as indicated in a defined nutrient content claim, are federal standards, established in the act through cross-reference. For whole milk, lowfat milk, and skim milk, however, the standards of identity that it allows deviation from, again only as so indicated, are strictly state standards, established in the act solely according to its own terms.
 

 In spite of all, the Court of Appeal concluded that what it styled the “plain meaning” of section 32912 demonstrated that the provision did indeed adopt the less stringent federal standards of identity for milk and milk products, including whole milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards. It reasoned: The Legislature faced a “fundamental dilemma” as it considered the enactment of Assembly Bill No. 444. As reflected in its 1993 petition for administrative exemption from the NLEA’s rule of preemption covering the less stringent federal standards of identity for whole milk, lowfat milk, and skim milk, which was then
 
 *429
 
 pending, the “State wished to retain its own” more stringent standards. But “the NLEA, with its preemptive effect, made the retention of . . . exclusive state standard[s]” of identity “illegal until an exemption could be obtained.” By adopting the less stringent federal standards of identity as alternatives to the more stringent state standards, “[sjection 32912 . . . resolved, if not happily, [the] State’s dilemma.”
 

 We disagree.
 

 The Legislature faced no such “dilemma,” “fundamental” or otherwise. It is true that the “State wished to retain its own” more stringent standards of identity for whole milk, lowfat milk, and skim milk. But it is decidedly not true that “the NLEA, with its preemptive effect, made the retention of . . . exclusive state standard[s]” of identity
 
 “illegal
 
 until an exemption could be obtained.” (Italics added.) Until such time, state standards of identity would continue to operate for whole milk, lowfat milk, and skim milk that were “intrastate products” (58 Fed.Reg. 2462 (Jan. 6, 1993)), but not for whole milk, lowfat milk, and skim milk that were not. Because the Legislature did not face any “dilemma” compelling it to avoid or cure any “illegality],” it did not have to bring it to resolution. Hence, it did not have to provide in section 32912 for the less stringent federal standards of identity as alternatives to the more stringent state standards. And, as we have shown, it did not in fact do so.
 

 The Court of Appeal then stated that it found “nothing” in the “legislative history” of Assembly Bill No. 444 that “contradicted]” its “conclusion concerning” section 32912’s “plain meaning.”
 

 We find much.
 

 In anticipation of favorable federal action on the state’s 1993 petition for administrative exemption from the NLEA’s rule of preemption covering the less stringent federal standards of identity for whole milk, lowfat milk, and skim milk—which would be rendered moot by the enactment of FAIRA with its statutory exemption—Assembly Bill No. 444 excluded from its scope any modification of the state’s more stringent standards. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended Mar. 24, 1994, pp. 1-2; Sen. Com. on Agr. and Wat. Resources, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended Mar. 24, 1994, pp. 1-2; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, pp. 1-2; Cal. Dept, of Food and Agr., Enrolled Bill Rep. on Assem. Bill No. 444 (1993-1994 Reg. Sess.) prepared for Governor
 
 *430
 
 Wilson (May 26, 1994) p. 1; see also Assem. Com. on Agr., Republican Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, p. 1
 
 {semble:
 
 referring to the exclusion but not the petition]; Legis. Counsel’s Dig., Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended Mar. 24, 1994 [not referring to the state standards of identity for whole milk, lowfat, and skim milk as among those to be “repealed”]; Legis. Counsel’s Dig., Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994 [same]; Legis. Counsel’s Dig., Assem. Bill No. 444 (1993-1994 Reg. Sess.) as enrolled May 23, 1994 [same]; Legis. Counsel’s Dig., Assem. Bill No. 444 (1993-1994 Reg. Sess.) as chaptered June 6, 1994 [same]; but see Assem. Com. on Agr., Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, pp. 1-2 [referring to neither the exclusion nor the petition].) The bill was unopposed and indeed uncontroversial. (E.g., Assem. Com. on Agr., Republican Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, p. 1.) It passed unanimously. (4 Assem. J. (1993-1994 Reg. Sess.) pp. 6835-6836; 3 Sen. J. (1993-1994 Reg. Sess.) pp. 4865-4866, 4883.)
 

 Assembly Bill No. 444’s exclusion from its scope of any modification of the more stringent state standards of identity for whole milk, lowfat milk, and skim milk weighs against any claim that, in section 32912, it adopted the less stringent federal standards as alternatives. Had it, in fact, adopted the less stringent federal standards of identity as alternatives, it would have changed the more stringent state standards, and done so radically. For it would have transformed the state standards of identity from what they had always been, namely, standards that
 
 must
 
 be met, to what they had never been, namely, standards that
 
 need not
 
 be. It is hard to imagine that such a transformation would have passed unanimously. It is even harder to imagine that it would have been unopposed. It is harder still to imagine that it would have been uncontroversial.
 

 By enacting Assembly Bill No. 444, the Legislature repealed state standards of identity for certain milk products—but
 
 not
 
 whole milk, lowfat milk, or skim milk—and conformed the state standards of identity for those foods to the federal standards through cross-reference. (See Stats. 1994, ch. 95, § 51.) By so doing, it did
 
 not
 
 repeal the more stringent state standards of identity for whole milk, lowfat milk, and skim milk, and did
 
 not
 
 conform them to the less stringent federal standards. And it did
 
 not
 
 adopt the latter as alternatives to the former.
 

 Like the Court of Appeal, Shamrock claims that the “plain meaning” of section 32912 demonstrates that the provision adopts the less stringent federal standards of identity for milk and milk products, including whole
 
 *431
 
 milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards, and that the legislative history of Assembly Bill No. 444 “does not contradict” the provision’s “plain meaning.”
 

 In part, Shamrock relies on the Court of Appeal’s analysis. We rejected it earlier, and need not examine it again.
 

 In part, Shamrock puts forth its own analysis. We now reject it as well.
 

 In its “plain meaning” argument, Shamrock reasons in substance that, in view of the NLEA, the Legislature had to provide for the less stringent federal standards of identity for whole milk, lowfat milk, and skim milk as alternatives to the more stringent state standards, and that it did, in fact, so provide in section 32912. As we explained in dismissing what the Court of Appeal claimed to be the “fundamental dilemma” facing the Legislature, the Legislature did not act, or have to act, as Shamrock asserts. That section 32912 applies not only to “milk produces]” but also to “milk” (Food & Agr. Code, § 32912) is of no consequence. To repeat: Section 32912 provides that “[a]ny milk or milk product . . . that is subject to a standard of identity” established in the Milk and Milk Products Act of 1947 “may be specially formulated or processed to . . . modify its nutrient profile,” and thereby provides for “modified” milk and milk products as specified therein. It simply does not provide, or provide for, any alternative standard of identity, whether more or less stringent—surely not any alternative
 
 federal
 
 standard of identity of any sort for whole milk, lowfat milk, or skim milk. For whole milk, lowfat milk, and skim milk, the standards of identity that it allows deviation from, albeit only as indicated in a defined nutrient content claim, are strictly state standards, established in the act solely according to its own terms.
 

 In its “legislative history” argument, Shamrock maintains, in effect, that two documents indicate that, in section 32912, the Legislature provided for the less stringent federal standards of identity for whole milk, lowfat milk, and skim milk as alternatives to the more stringent state standards in section 32912 by indicating that it conformed state standards of identity for milk and milk products generally to federal standards. (Assem. Com. on Agr., Republican Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994; Cal. Dept, of Food and Agr., Enrolled Bill Rep. on Assem. Bill No. 444 (1993-1994 Reg. Sess.) prepared for Governor Wilson (May 26, 1994).) Neither document even alludes to section 32912. One may be read to support state-to-federal conformance—but only as to labeling nomenclature,
 
 not
 
 as to standards of identity for whole milk, lowfat milk, or skim milk. (Assem. Com. on Agr., Republican Analysis of Assem. Bill No. 444 (1993-1994 Reg. Sess.) as amended May 5, 1994, p. 1.) The other may also be read
 
 *432
 
 to support state-to-federal conformance—but only as to standards of identity for milk and milk products
 
 other than
 
 whole milk, lowfat milk, and skim milk. (Cal. Dept, of Food and Agr., Enrolled Bill Rep. on Assem. Bill No. 444 (1993-1994 Reg. Sess.) prepared for Governor Wilson (May 26, 1994) p. 1.) What section 32912 concerns itself with is not state-to-federal conformance, but rather state and federal parallelism, to provide for modified versions of foods subject to a standard of identity like part 130.10, its model. State-to-federal conformance, however, seems beside the point. For Shamrock asserts that it sees in section 32912 not state-to-federal conformance, but rather state and federal alternatives. Such alternatives do not appear, because they do not exist.
 

 IV
 

 We turn to the decision of the Court of Appeal reversing the judgment of the superior court.
 

 The Court of Appeal did not err by subjecting to independent review the superior court’s construction of section 32912 as not adopting the less stringent federal standards of identity for milk and milk products, including whole milk, lowfat milk, and skim milk, as alternatives to the more stringent state standards. To determine the meaning of such a provision entails the resolution of a pure question of law.
 
 (Regents of University of California v. Superior Court
 
 (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808]; see
 
 20th Century Ins. Co. v. Garamendi
 
 (1994) 8 Cal.4th 216, 271 [32 Cal.Rptr.2d 807, 878 P.2d 566].) The soundness of the resolution of such a question is examined de novo.
 
 (Regents of University of California v. Superior Court, supra,
 
 20 Cal.4th at p. 531; see
 
 20th Century Ins. Co. v. Garamendi, supra,
 
 8 Cal.4th at p. 271.)
 

 But, as we have explained, the Court of Appeal did in fact err by rejecting the superior court’s construction of section 32912 in favor of its opposite.
 

 Inasmuch as the Court of Appeal’s decision was based solely on its erroneous construction of section 32912, its judgment is unsupported as a matter of law. Whether it should ultimately affirm or reverse or otherwise dispose of the superior court’s judgment will turn on how it resolves the claims that it did not reach.
 
 [4]
 

 
 *433
 
 V
 

 For the reasons stated above, we conclude that we must reverse the judgment of the Court of Appeal and remand the cause to that court for proceedings not inconsistent with the views expressed in this opinion.
 

 It is só ordered.
 

 George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 [1]
 

 Which, it happens, was supported in a letter to the court by the author of the bill that added section 32912.
 

 [2]
 

 Shamrock requests us to take judicial notice of matters reflected in various articles and editorials and legislative documents. We deny its request. It is true that, as a “reviewing court” (Evid. Code, § 459, subd. (a)), we
 
 must
 
 take judicial notice of some matters
 
 (id.,
 
 § 451) and
 
 may
 
 take judicial notice of others
 
 {id..,
 
 § 452). There is, however, a precondition to the taking of judicial notice in either its mandatory or permissive form—any matter to be judicially noticed must be relevant to a material issue. (See
 
 Mangini v. R.J. Reynolds Tobacco Co.
 
 (1994) 7 Cal.4th 1057,1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].) That is not the case here. Shamrock claims that the matters reflected in the articles and editorials are “relevant” to the issue whether questions of “nutritional value and cost are for the Legislature, not the courts,”
 
 *423
 
 and that the matters reflected in the legislative documents are “relevant” to the issue whether the question of the “calcium content of milk is pending before the Legislature.” Neither issue, however, is material.
 

 For their part, the People request us to take judicial notice of matters reflected in various legislative documents. They claim that the matters reflected therein are “relevant” to the issue whether the Legislature acted “in response to” FAIRA. The issue, however, is not material. Hence, we deny their request.
 

 Lastly, Californians for Nutritious Milk et al., who appear with our leave as amici curiae supporting the People’s position, request us to take judicial notice of matters reflected in various documents. They claim that the matters reflected therein are relevant to the issue what “role dairy nutrients, . . . particularly calcium, play in the public health.” The issue, however, is not material. Hence, we deny their request.
 

 [3]
 

 Which, it happens, is the answer given by the author of the bill that added section 32912. See,
 
 ante,
 
 at page 422, footnote 1.
 

 [4]
 

 Which do
 
 not
 
 appear to include whether Shamrock’s whole milk, lowfat milk, or skim milk comes within the terms of section 32912 broadly as “modified” or more narrowly as “specially formulated or processed to . . . modify its nutrient profile.” (Food & Agr. Code,
 
 *433
 
 § 32912.) Throughout the life of this action, Shamrock has taken the position that its whole milk, lowfat milk, and skim milk were not “modified” in any way, and certainly were not “specially formulated or processed to . . . modify [their] nutrient profile[s].” It has characterized them instead as “natural” and “real.”
 

 The People presented as an issue on review whether a person violates the Milk and Milk Products Act of 1947 by “mak[ing] or causing] to be made” a “false, deceptive, or misleading” “statement... in connection with” the sale or delivery of a milk or milk product (Food & Agr. Code, § 32914) that meets an alternative, but less stringent, federal standard of identity under section 32912 when he fails to disclose that the milk or milk product in question does not meet a more stringent state standard. We have concluded that there
 
 are
 
 no alternative federal standards of identity of any kind under the provision. Hence, we need not, and do not, address the question.