Filed 5/20/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re IVAN N., a Person Coming Under the Juvenile Court Law. | |
| | D068595 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J237013) |
| v. | |
| IVAN N., | |
| Defendant and Appellant. | |

APPEAL from a judgment and order of the Superior Court of San Diego County, Ronald L. Johnson, Judge.  (Retired Judge of the San Diego Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Steven J. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal arises out of the juvenile court's dispositional and placement orders under Welfare and Institutions Code sections 602 and 727, adjudicating a minor to be a ward of the court and placing him under the custody and control of a probation officer.[1] We consider the interaction of those delinquency provisions with the language of Education Code section 48853.5 ["Notice of educational rights of foster children . . ."], which applies to foster children or other minors subject to juvenile court adjudication, and requires consideration of a preference to continue their attendance at their schools of origin.

In this case, the juvenile court at the dispositional hearing determined that Ivan N. (the minor), who had admitted to a felony sex offense, should be placed out of his home for treatment in a community-based organization (CBO), which could include, if necessary, education at a juvenile court school. (Ed. Code, § 48645.1 [defining juvenile court schools].) During further dispositional proceedings, the court denied the minor's motion for an additional hearing to consider whether he could be returned to his high school of origin after he received a short period of such treatment.

On appeal, the minor contends the juvenile court erred in denying his motion and he should be entitled to further hearings on his educational preferences (i.e., returning him to his school of origin), as a person who fits the definition of a "foster child" under

_____

1       All further statutory references are to the Welfare & Institutions Code unless otherwise specified.  In pertinent part, section 727, subdivision (a)(1)-(4) provides that when a minor has been adjudicated a ward of the court pursuant to section 602, the court may place the minor's care, custody, and control under the supervision of a probation officer, if other alternatives are not available (e.g., parental or foster care placement).

Education Code section 48853.5, subdivision (a) by remaining "the subject of a petition filed under [section 602]."[2]

The People respond that once the adjudication and placement occurred, the juvenile court properly resolved the motion by concluding that the minor, as a ward under the supervision of the probation officer, had not shown entitlement to further hearings on school of origin issues. (§ 727, subd. (a)(3), (4); Ed. Code, § 48853.5, subd. (h) ["section does not supersede other law governing the educational placements in juvenile court schools"; see *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1398 [juvenile court's duties at disposition include accommodating and planning for a child's educational needs].)

We conclude the juvenile court was correct in determining that the Education Code provisions and related California rule of court relied upon by the minor (Cal. Rules of Court, rule 5.651 ["Educational and developmental-services decisionmaking rights"]) did not require it to grant a separate hearing on the request.[3] (Ed. Code, § 48853.5, subd. (h).) The procedures created by Education Code section 48853.5, subdivisions (a) through (g) were intended to be primarily directory toward state and local educators and their designated staff educational liaisons who act on behalf of foster children. Education

---

2    Education Code section 48853.5 was enacted in 2004 as part of Assembly Bill No. 490 (2003 Reg. Session), intended to improve the educational services provided to dependents and wards in foster care. In pertinent part, Education Code section 48853.5, subdivision (a) defines "foster child" as meaning "a child who has been removed from his or her home pursuant to Section 309 of the Welfare and Institutions Code, is the subject of a petition filed under Section 300 or 602 of the Welfare and Institutions Code, or has been removed from his or her home and is the subject of a petition filed under Section 300 or 602 of the Welfare and Institutions Code."

3    All further rule references are to the California Rules of Court unless noted.

Code section 48853.5, subdivision (h) carves out an exception to those administrative procedures, and prevents interference with the discretion granted to a juvenile court that has made section 602 jurisdictional findings that a minor is a ward of the court, to make related placement orders giving the probation officer the authority to determine the appropriate placement for the ward. (§§ 725, 726, 727, subd. (a)(4).) Once the true findings on the section 602 petition were made, the procedures of section 727 controlled the minor's dispositional proceedings. Based on the court's placement order under section 727, subdivision (a)(4), the probation officer could exercise authority without regard to the definitions of a "foster child" in Education Code section 48853.5, subdivision (a). We affirm the order and judgment.

## I

### *BACKGROUND*

When the minor was 17 years old and had been in his adoptive home for three years, his adoptive parents learned from an incident at their home that he had molested their daughter, age 7 (sometimes termed the "victim"). The minor admitted that he had used his hands and penis to touch her genital area several times over the past year. He was arrested and confined at juvenile hall. He was arraigned April 16, 2015 on a section 602 delinquency petition that charged him with two counts of committing a lewd act on a minor under the age of 14. (Pen. Code, § 288, subd. (a).)

During an interview, the minor apologized and admitted he should not have molested the victim, which he did to get back at his parents. His psychological evaluator

4

recommended referring him to an outpatient or residential facility that specialized in treating male adolescent sex offenders with therapy and programming.

After the minor admitted to one of the charged counts on May 4, 2015, the court dismissed the other count in the interest of justice. The minor was determined to be a person described by section 602 who was subject to being placed on probation. The social study prepared by the probation department recommended that he be placed at a CBO and receive appropriate treatment for a sex offender.

On May 18, 2015 at the dispositional hearing, the minor agreed to the proposed residential placement, but requested a hearing on whether he should be allowed to return to the North San Diego County high school he had previously attended, his "school of origin" within the meaning of Education Code section 48850 et seq. (ch. 5.5, "Education of Pupils in Foster Care and Pupils who are Homeless"). He had friends there and had been passing all of his classes. The court responded that although the Education Code sections relied on were applicable as to both dependency and delinquency matters, they were secondary to the current placement issues. (§§ 300, 602.)

At the disposition hearing, the court heard from the minor's parents. His mother (also the victim's mother) was concerned that it would not be appropriate to return the minor to his local high school, since their other children attend a grade school across the street and it would be difficult for them not to see him there. The court placed the minor under the custody and supervision of the probation department, and ordered that he continue to be detained in juvenile hall pending his placement in a CBO. (§ 726, subd. (a).) The conditions of his probation included participation in a program of

counseling or education as directed by the probation officer. (§ 727, subds. (c), (d).) The court discussed with the minor's attorney whether a special hearing would be required to address the minor's request to be placed near his school of origin.

At the next review hearings on June 3 and 17, 2015, the court indicated that the issues previously raised about the scope of legislation on the school of origin were still being reviewed. (Ed. Code, § 48853.5.) At the June 3, 2015 hearing, the court tentatively ruled that when there was a court order pursuant to a section 602 petition, there was an exception to such Education Code protections for maintaining a foster child's attendance in the school of origin. The court allowed the minor to bring a noticed motion on the matter.

For the June 2015 review hearings, the probation officer reported that a San Diego based residential treatment program, San Diego Youth Services The Bridge (SDYS), had tentatively accepted the minor and required that he also be enrolled in a local sexual treatment and program services (STEPS) therapeutic juvenile court school program during the day.[4] SDYS would be unable to accommodate transporting him to the North County school of origin. The minor was placed at SDYS effective June 8, 2015 and began attending day school at the STEPS program.

The hearing on the minor's motion regarding educational rights took place on July 22, 2015, and the court considered the moving and opposing papers and heard

---

[4]    Education Code section 48645.1 defines a "juvenile court school" as including a day center or regional youth educational facility, such as STEPS.

6

argument. The minor was not requesting an order returning him to his original school immediately, but sought a future hearing on whether he could return there after summer break was over, or at a later time while the juvenile court still retained jurisdiction over him. Defense counsel argued that the petition was still pending and had not yet been dismissed, and thus the minor still qualified as a foster child to whom the procedures under Education Code section 48853.5 and rule 5.651 must apply.[5]

The prosecutor responded that the minor did not fall within the purview of Education Code section 48853.5, because once he made his admission to the charge and was adjudged a ward of the court, the controlling law applicable to his care, custody and control became sections 726 and 727, making the probation officer the holder of his educational rights. The prosecutor argued that the rule of court was not to the contrary, even though the section 602 petition had not yet been dismissed, because the language of the rule appeared to broaden the scope of the statutory rights, which was not its proper function as a procedural rule.

The court concluded that once the true findings were made on the section 602 petition, a different threshold in the proceedings had been reached and the petition was no longer pending. After those true findings were made, section 727 applied and required that the probation department have the authority to make planning decisions for the

---

[5]    In pertinent part, rule 5.651(a)(1) provides procedures for administering decision-making rights for the receipt of educational or developmental services that are recognized or established by state or federal law, at a judicial hearing concerning "any child, or any nonminor or nonminor dependent youth, for whom a petition has been filed under section 300, 601, or 602 until the petition is dismissed or the court has terminated dependency, delinquency, or transition jurisdiction over that person."

minor. As a result, the Education Code section 48853.5 school of origin or choice procedures did not apply. The court continued the minor's placement at SDYS. He filed a timely notice of appeal.

## II

### *STATUTORY SCHEME*

#### A. Review; Issues Presented

When determining the meaning of a statutory provision, we resolve pure questions of law by applying de novo standards of review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) We decide if the juvenile court's construction of the applicable provisions was correct and if its judgment is supported as a matter of law. (*Ibid.*) A statute should not be read in isolation, "but construed in context and ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' " (*Compulink Management Center, Inc. v. St. Paul Fire & Marine Ins. Co.* (2008) 169 Cal.App.4th 289, 296.)

"Rules of court have the force of law and are as binding as procedural statutes as long as they are not inconsistent with law." (*R.R. v. Superior Court* (2009) 180 Cal.App.4th 185, 205; *In re Juan C.* (1993) 20 Cal.App.4th 748, 752-753.)

We consider the scope of the definitions of a "foster child" under Education Code section 48853.5, subdivision (a) as applied to this circumstance, in which the minor has been adjudicated a ward of the juvenile court who is now subject to the care, custody and control of the probation officer under section 727. Considering the sequence of events disclosed by this record, we also examine the applicability of rule 5.651(b)(2)-(f),

8

concerning the educational considerations properly to be brought before the juvenile court at a minor's dispositional and subsequent hearings.

## B. Educational Decisionmaking Rights; School of Origin

Education Code section 48850 expresses the legislative intent of these related sections, that in serving the population of foster children or homeless children, educators, governmental agencies and the juvenile courts shall work together to maintain stable school placements. (Ed. Code, ch. 5.5, "Education of Pupils in Foster Care and Pupils Who Are Homeless," §§ 48850-48859.) As part of this scheme, Education Code section 48853.5, subdivisions (b) and (c) initially place duties upon the state department of education and local educational agencies, to create procedures for designating a staff person as an educational liaison for foster children, who will assist them in obtaining proper school enrollment and transfers.

The definitions in Education Code section 48853.5, subdivision (a) of a "foster child," as including a minor subject to a section 602 petition (whether removed from the home or not), must be read in context of the statutory scheme of which they are a part. Consistent with the involvement of numerous agencies and care providers for such foster children (as recognized in Ed. Code, § 48850), Education Code section 48853.5, subdivision (e) requires that the designated educational liaison shall have an advisory role with respect to placement decisions and determinations of the school of origin, subject to the rights of responsible adults, whether they are parents or appointed persons or officials (e.g., pursuant to section 726 where limitations have been imposed upon parental control).

9

Education Code section 48853.5, subdivision (f) specifies that it is among the duties imposed on local educational agencies that are serving a foster child to include a consideration, during placement proceedings, of allowing him or her an opportunity to continue in the school of origin.[6] Education Code section 48853.5, subdivision (g) provides criteria for determining which school shall be determined to be the school of origin.

Under Education Code section 48853.5, subdivision (f)(6), the child's educational liaison and responsible parties are allowed to waive the child's right to attend the school of origin, subject to the criterion of the best interest of the child. Education Code section 48853.5, subdivision (h) specifies that the section overall "does not supersede other law governing the educational placements in juvenile court schools, as described in [Education Code] Section 48645.1, by the juvenile court under section 602 of the Welfare and Institutions Code."

### C. Probation's Placement Authority

Section 726, subdivision (a) allows the juvenile court to limit the parental control to be exercised over a minor who has been adjudged a ward or dependent child of the court, pursuant to section 725, subdivision (b). Section 726, subdivision (b) provides that the court may appoint, in place of a parent, a responsible adult to make educational decisions for the child during the period of juvenile court jurisdiction. With respect to the

---

[6]     Education Code section 48853.5, subdivisions (f)(3) and (f)(5) restrict to some extent a requirement for an agency to provide transportation, as a related educational service.

10

interaction of sections 726 and 727, it is expressly stated in section 726, subdivision (d)(6) that "[t]his section does not limit the power of the court to retain jurisdiction over a minor and to make appropriate orders pursuant to Section 727 for the period permitted by Section 607 [referring to retention of jurisdiction after age 21 in some cases]."

Under section 727, the juvenile court must make orders for the custody and care of wards of the court. Section 727, subdivision (a)(1) provides: "If a minor or nonminor is adjudged a ward of the court on the ground that he or she is a person described by Section 601 or 602, the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor or nonminor, including medical treatment, subject to further order of the court." (*In re Luis F*. (2009) 177 Cal.App.4th 176, 188-189 [discretionary orders].)

Under section 727, subdivision (a)(2), some minors in delinquency proceedings may be placed on probation. Where that is not appropriate, section 727, subdivision (a)(3) places the care, custody and control of such minors under the supervision of the probation officer. Section 727, subdivision (a)(4) states that it "is the sole responsibility . . . of the probation agency to determine the appropriate placement for the ward once the court issues a placement order."[7] Such placements could include home or foster care, or

---

7    Under section 727, subdivision (a)(4), the probation agency has the responsibility under 42 United States Code section 672 (a)(2)(B) ("Foster care maintenance payments program") to determine an appropriate placement for the ward, and to ensure that the removal and foster care placement meet federal requirements, regarding responsibility for the child's placement and care and payment thereof.

11

licensed community care facilities. (§ 727, subd. (a)(4)(A)-(G).)[8] Thus, some minors who have been declared a ward may remain living in the community, attending schools there while also having the status of a foster child, but other minors (such as this one) are evaluated by the probation officer as being in need of more supervision and a higher level of custody.

### D. Rules of Court on Educational Decisionmaking

*In re Angela M.*, *supra*, 111 Cal.App.4th 1392, 1397-1399 stands for the proposition that where the juvenile court is placed on notice that special attention to a minor's educational needs is appropriate, the court must make adequate findings on a sufficient record on how to address those needs, before implementing dispositional orders (in that case, a CYA commitment). There, the court was applying a previous version of a dispositional rule of court (formerly rule 1493, now found at rule 5.790(a)(2)(C) [dispositional hearing orders may result in a wardship order]; *Angela M.*, *supra*, at pp. 1397-1399.)

Pursuant to rule 5.790(h) (entitled "Wardship orders (§§ 726, 727, 727.1, 720, 731)"), "The court may make any reasonable order for the care, supervision, custody, conduct, maintenance, support, and medical treatment of a child adjudged a ward of the court." These include ordering removal of custody and placement of the minor in a

---

8     As explained in a treatise, after a section 602 petition is sustained, placement of a minor in foster care is "infrequently utilized as a dispositional alternative," but may be made under limited circumstances. (Seiser & Kumli on California Juvenile Courts Practice and Procedure (2016) § 3.96[3][b][i], p. 3-201; citing Welf. & Inst. Code, §§ 726.4, 727.2, 727.3, 727.31, 727.4.)

treatment facility as described in section 727 et seq., where enumerated factors so indicate. (Rule 5.790(h)(3), (4).) Where the court has limited the parents' rights to make educational decisions for the ward, the court must follow the procedures in rules 5.649 through 5.651. (Rule 5.790(h)(5).)

The minor contends the definitions in rule 5.651(a), stating its applicability, encompass him and all the hearings throughout his delinquency proceedings, since he remains the subject of a section 602 petition. Rule 5.651(a) applies: "(1) To any child, or any nonminor or nonminor dependent youth, *for whom a petition has been filed under section 300, 601, or 602 until the petition is dismissed or the court has terminated dependency, delinquency, or transition jurisdiction over that person*; and (2) To every judicial hearing related to, or *that might affect, the child's or youth's education* or receipt of developmental services." (Italics added.)

Pursuant to rule 5.651(b)(2), the juvenile court at dispositional and subsequent hearings must consider numerous factors concerning the educational needs of minors under its jurisdiction. Rule 5.651(b)(2) anticipates that the court shall "(B) Identify the educational rights holder on form JV-535; and (C) Direct the rights holder to take all appropriate steps to ensure that the child's or youth's educational and developmental needs are met."

At hearings on changes of placements that may affect a minor's educational stability, rule 5.651(e) and (f) require that if the attendance at a school of origin may be changed, the court must ensure notice is given to the minor and representatives, and must make an assessment of how the placement plan will protect educational rights. The court

13

is to consider the educational rights holder's opinion on whether removal from the school of origin is in the minor's best interest. (Rule 5.651(f)(2)(A).)

Rule 5.651(a) is not limited to the wardship context, but encompasses dependency and foster care proceedings. It is significant that the many state and federal statutes enumerated as covered by this rule's procedures (i.e., those which recognize or establish educational rights/services), include section 726 (limitations on parental control), as well as Education Code sections 48645 et seq. and 48850 et seq. However, rule 5.651(a) omits to state that it has any application to section 727. This makes sense, because the juvenile court's authority under section 727, to order the care, custody and control of a minor ward placed under the probation officer's supervision, is independent and unaffected by such rulemaking.

## III

### *ANALYSIS*

#### A.  Contentions; Narrow Issue Presented

The minor continues to argue he remains "the subject of a petition" filed under section 602 throughout the wardship proceedings, and without more, he is entitled to further hearings under the definitions in Education Code section 48853.5, subdivision (a) and those of rule 5.651(a). He claims that "nothing in section 727 excludes the application of Education Code section 48853.5 to wards after true findings are entered."

By way of comparison, the minor argues that appellate jurisdiction continues even after an adjudication, allowing such decisions to remain subject to review and revision.

14

He believes that the statutory policies require that the probation officer's placement decisions for a ward shall continue to be controlled by Education Code section 48853.5.

We construe Education Code section 48853.5 only with reference to the facts before us. Before the minor's delinquency proceeding arose, the school system had not been treating him as a foster child. He did not have the kind of agency designated educational liaison as defined in Education Code section 48853.5, subdivisions (c) through (f), who would assist him as a foster child (or his responsible parties) on decisions about attending a school of origin.

Instead, the minor was immediately arrested when the details of his offense became known, and was removed from the home and held in juvenile hall pending adjudication of the charges against him. Arguably, he qualified for a short period as a foster child, during the adjudication of the section 602 petition. (Ed. Code, § 48853.5, subd. (a) [a minor remains "the subject of a petition filed under [section 602]" until such time as the juvenile court no longer retains jurisdiction].)

Ultimately, the juvenile court made a placement order and pursuant to the probation officer's investigation, the minor was placed in residential care, including a juvenile court school, due to his need for therapy and supervision as an admitted sex offender. (§ 727, subd. (a)(3), (4).) His family had opposed keeping him in his school of origin. Section 726 allowed the court to impose limitations on parental control and custody, and its subdivision (d)(6) expressly states that the section as a whole does not "limit the power of the court to retain jurisdiction over a minor and to make appropriate orders *pursuant to Section 727*" [during the length of the jurisdictional period of]

15

section 607."  (Italics added.)  That is what happened here, and his foster child characterization became secondary in nature.

## B.  Effect of Placement Orders

To address the minor's policy arguments, we examine the scope of the advisory function of an educational liaison within the meaning of Education Code section 48853.5, as it may apply to the probation agency holding custody of a ward under section 727. Education Code section 48853.5, subdivision (e) confirms that an educational liaison's role cannot supersede "the authority granted under state and federal law to . . . a responsible adult appointed by the court to represent the child pursuant to Section [726] of the Welfare and Institutions Code."  (Ed. Code, § 48853.5, subd. (e).)

Just as Education Code section 48850 recognizes that there are numerous agencies and care providers involved in the care of foster children, its related sections (e.g., Ed. Code, § 48853.5) attempt to accommodate all the numerous types of legal proceedings that can give rise to the status of a foster child, including dependency and delinquency. (§§ 300, 601, 602.)  The creation in Education Code section 48853.5, subdivision (c) of the educational liaison position, to assist foster children in the community during their educational decisionmaking, appears to be directed mainly toward children affected by other types of foster care proceedings.  (Ed. Code, § 48853.5, subds. (c)-(g).)

Education Code section 48853.5, subdivision (h) excepts from its application the "other law governing the educational placements in juvenile court schools, as described in [Education Code] Section 48645.1, by the juvenile court under [Welfare & Institutions Code] Section 602."  This express reservation of the power of the juvenile court to

16

authorize placements in juvenile court schools is consistent with the overall nature of the section, which is mainly directory in nature toward the state department of education and local educational agencies. (Ed. Code, § 48853.5, subds. (b)-(h).)

While a petition under section 602 is being processed, but before adjudication, the minor is treated as a foster child who is not yet a ward of court. Upon his or her admission to charges or a true finding, a different threshold is reached and some of these pretrial types of protections fall away. When this minor was declared a ward of court and placement orders were made under sections 726 and 727, the probation officer became the holder of his educational rights, including authority to consider any school of origin issues. (§ 727, subd. (a)(3), (4); Ed. Code, §48853.5, subd. (f)(6) [child's educational liaison or responsible parties may waive right of attendance at school of origin].)

The minor cannot appropriately focus on section 727 and argue that it does not expressly exclude applicability of Education Code section 48853.5. This statutory and rule scheme should be read as acknowledging that there are different types of proceedings affecting foster children, and different stages within each of them. On its own terms, Education Code section 48853.5 and its subdivision (h) recognize that educational agencies must defer to the authority of the juvenile court and the probation officer to make educational placements in juvenile court schools. (Ed. Code, § 48645.1.) Where appropriate, school of origin considerations may continue to be relevant to the probation officer's placement decisions, but under section 727, subdivision (a)(3) and (4), they are not controlling.

17

C. Court Rules Do Not Create Additional Protections Over Statutory Provisions

Rule 5.790, the general juvenile court dispositional rule, provides at its subdivision (h) that under sections 726 and 727, etc., the juvenile court may "make any reasonable order for the care, supervision, custody, conduct, maintenance, support, and medical treatment of a child adjudged a ward of the court." (Rule 5.790(h)(3).) Where removal from parental custody is necessary, the court authorizes the probation officer to place the ward with an appropriate person or organization described in section 727. (Rule 5.790(h)(4).) Where parental control over educational decisions is limited, the court must turn to the procedures of rules 5.649 through 5.651. (Rule 5.790(h)(5).)

Admittedly, rule 5.651(a) seems to provide that school of origin considerations are to be mandatorily addressed during the adjudication of any section 602 petition, "until the petition is dismissed" or jurisdiction is terminated. (Rule 5.651(a).) However, its language was intended to implement the educational services available through specified federal and state statutes, especially for children who are able to remain in the community, whether or not they are wards of court. With respect to wards who have been removed from the home and for whom placement orders have been made, these court rules cannot infringe upon the separate statutory authority granted to the juvenile court, to delegate to the probation department certain placement decisions. (§ 727; Ed. Code, § 48853.5, subd. (h) [section does not supersede other law that allows educational placements in juvenile court schools].)

The juvenile court correctly observed that although the Education Code sections relied on were applicable as to both dependency and delinquency matters, they were

18

secondary to the current placement issues. (§§ 300, 602.) In this wardship proceeding, the court was not required to create a record that utilized a judicial council form JV-535, as referred to in rule 5.651(b)(2), for specifying an educational plan that met the minor's needs .

In any event, the record shows the court was presented with sufficient information to enable it to make an informed disposition of the minor's case. (See *In re Angela M.*, *supra*, 111 Cal.App.4th 1392, 1398.) The probation officer's placement recommendations were justified by the record. The victim's mother had raised concerns about the need for treatment for the minor, away from the neighborhood. Once the adjudication of the section 602 petition was accomplished, the dispositional criteria were those specifically applicable to wardship proceedings. Education Code section 48853.5 did not impose any obligation on the juvenile court to order additional hearings on requests to return to the school of origin.

DISPOSITION

The judgment and order denying the motion are affirmed.

_____
HUFFMAN, Acting P. J.

WE CONCUR:


_____
NARES, J.


_____
O'ROURKE, J.