Filed 9/29/16  P. v. Diaz CA5
Opinion following remand

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MARIANO DIAZ, JR.,<br><br>     Defendant and Appellant. | F068070<br><br>(Super. Ct. No. VCF107543)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Galen Farris and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Mariano Diaz, Jr., received a prison sentence of 55 years to life for crimes he committed when he was 17 years old. In our unpublished opinion in *People v. Diaz* (Aug. 19, 2015, F068070), we determined his sentence did not violate the Eighth Amendment as a functional equivalent of a life sentence without the possibility of parole (LWOP). We reached that conclusion in light of Penal Code section 3051,[1] which gives him a parole eligibility hearing during his 25th year of incarceration. (§ 3051, subd. (b)(3).)

The California Supreme Court granted review of our opinion and ordered briefing deferred pending decision in *People v. Franklin*, S217699. On May 26, 2016, the Supreme Court decided *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), and transferred this matter back to this court with directions to vacate our decision and reconsider the cause in light of *Franklin* at pages 268-269 and 283-284.

In light of *Franklin*, we again affirm appellant's sentence because he has a meaningful opportunity for release during his 25th year of incarceration. As such, his constitutional claim is moot. (*Franklin, supra,* at pp. 268, 279-280.) However, consistent with *Franklin*, we remand this matter to the trial court for the purpose of determining whether appellant was afforded an adequate opportunity to make a record of information that will be relevant to the Board of Parole Hearings (Board) at his future eligibility hearing. We affirm but remand for that limited purpose.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The Underlying Crime.

These facts are taken from this court's nonpublished opinion in *People v. Diaz* (Dec. 22, 2008, F052637). In March 2003, appellant, a gang member, fired a handgun in Tulare County at two rival gang members. He used gang slurs just prior to the attack and

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

he fired his weapon after an older male told him to shoot. One of the victims suffered multiple gunshot wounds but survived. Appellant fled the scene and was not apprehended until September 2005. He was 17 years old when these crimes occurred.

In 2007, a Tulare County jury convicted appellant of two counts of attempted premeditated murder (§§ 664/187, subd. (a); counts 1 & 2) and two counts of assault with a deadly weapon (§ 245, subd. (a); counts 3 & 4). Several gun use enhancements, a great bodily injury enhancement, and a criminal street gang enhancement were all found true. (§§ 186.22, subd. (b), 12022.7, subd. (a), 12022.53, subds. (c)-(d).) Appellant was sentenced to a total term of 75 years to life. On December 22, 2008, this court affirmed the judgment and the Supreme Court subsequently denied review. (*People v. Diaz* (Dec. 22, 2008, F052637) [nonpub. opn.], review denied March 11, 2009, S170006.)

## II. The Habeas Corpus Petitions.

In 2011, appellant filed a petition for writ of habeas corpus in this court, arguing his sentence was a de facto LWOP and violated the Eighth Amendment, in part, under *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*). (*In re Mariano Diaz, Jr.*, on Habeas Corpus (June 2, 2011, F062572).) In 2012, our Supreme Court issued *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), which held the Eighth Amendment's prohibition against cruel and unusual punishment is violated in a nonhomicide case when a juvenile offender is sentenced to a term of years with a parole eligibility date that falls outside the juvenile's natural life expectancy. (*Caballero, supra,* at p. 268.)

On August 29, 2012, this court denied appellant's petition without prejudice in light of *Caballero*. Appellant was permitted to file a petition for writ of habeas corpus in the trial court to allow the lower court to weigh the mitigating evidence and determine the extent of incarceration before a parole eligibility hearing. (*In re Mariano Diaz, Jr.*, on Habeas Corpus (Aug. 29, 2012, F062572) [nonpub. opn.].) Appellant subsequently filed a habeas petition in the trial court, which ultimately resulted in a second sentencing hearing.

## III.    The Resentencing.

On September 11, 2013, the trial court conducted a hearing to modify appellant's sentence. Appellant's counsel filed a statement in mitigation prior to the resentencing hearing. The statement outlined the requirements of *Graham* and *Caballero*, and argued the trial court's indicated sentence of 55 years to life would violate those authorities. Defense counsel took the position appellant's life expectancy was 78.9 years based on the United States Life Tables by Hispanic Origin, Vital and Health Statistics (October 2010) Series 2, No. 152, p. 18 from the United States Department of Health and Human Services, Centers for Disease Control and Prevention. The defense pointed out appellant's youthfulness, lack of a criminal history, and strong support from friends and family as evidenced by numerous letters submitted in support in his original probation file. The defense also submitted that he was a member of a gang, and subjected to intense peer pressure and codes of behavior, and appellant reluctantly engaged in the shooting after an adult gang member told him to shoot. The defense outlined the California Rules of Court factors affecting probation and mitigation before concluding that the court should use counts 3 and 4 rather than counts 1 and 2 as the unstayed terms, and impose concurrent rather than consecutive terms.

Prior to the resentencing hearing, the prosecution filed a sentencing brief which argued appellant's anticipated minimum parole eligibility date was September 5, 2060, based on his custody credits from the time of his arrest on September 5, 2005. Based on the trial court's indicated sentence of 55 years, the prosecution asserted both *Graham* and *Caballero* were satisfied, in part, because appellant would be 74 years old at that time of parole eligibility, which would be more than four years before his statistical life expectancy.

On September 11, 2013, the trial court heard oral arguments from appellant's counsel and the prosecution. Appellant's counsel stated, in part, that the trial court's indicated sentence of 55 years would give appellant a minimum parole eligibility when

4.

he was 74 or 76 years old, which would provide him a life expectancy of approximately "two point something years longer than that." Defense counsel argued this approach ran against the "thrust" of *Graham* and *Caballero*, which required that the juvenile offender have a "meaningful or realistic opportunity" to show rehabilitation.

The prosecution argued appellant's statistical life expectancy was 80 years old based on an unidentified report from the United States Government, which was handed to the court during the arguments. The prosecution contended the indicated sentence was proper under *Caballero* because it gave appellant a chance at parole within his lifetime, and appellant was not guaranteed a "long happy life afterwards."

At the conclusion of oral arguments, the trial court modified appellant's sentence to 55 years to life in prison, broken down in relevant portion as follows:

Count 1: 15 years to life (§§ 664/187, subd. (a)) plus an additional consecutive 25 years to life (§ 12022.53, subd. (d));

Count 2: 15 years to life (§§ 664/187, subd. (a)) consecutive to count 1;

Count 3: three years (§ 245, subd. (a)), which was stayed (§ 654); and

Count 4: three years (§ 245, subd. (a)), which was stayed (§ 654).

The court struck or stayed all remaining enhancements found true by the jury. The court awarded appellant credit with 3,014 days in custody.

## DISCUSSION

On appeal before this court in *People v. Diaz* (Aug. 19, 2015, F068070), appellant asserted that his modified sentence of 55 years to life is unconstitutional as it continues to represent cruel and unusual punishment under *Graham, supra,* 560 U.S. 48 and *Caballero, supra,* 55 Cal.4th 262. He argued he will not be eligible for parole within his life expectancy or, if he is, it will be for only several "meaningless" years. He further contended Senate Bill No. 260 does not render moot his constitutional challenge and the need for resentencing.

5.

Respondent countered that appellant does not have a de facto life sentence because the trial court gave him a parole eligibility date within his life expectancy, meeting the requirements of *Graham* and *Caballero*. Respondent further contended Senate Bill No. 260 has rendered moot any need for further resentencing. In our unpublished opinion in *People v. Diaz* (Aug. 19, 2015, F068070), we agreed with respondent and rejected appellant's claims. After considering *Franklin, supra,* 63 Cal.4th 261, we again affirm appellant's sentence.

## I. The Controlling Cases Prior To *Franklin*.

Relevant to our discussion, we provide an overview of the three controlling cases prior to *Franklin* regarding the Eighth Amendment and juvenile sentencing.

First, in *Graham, supra,* 560 U.S. 48, it was held that the Eighth Amendment prohibits states from sentencing a juvenile convicted of nonhomicide offenses to LWOP. (*Graham, supra,* at p. 75.) The Supreme Court noted a "moral" difference between homicide and nonhomicide crimes, and it commented on various scientific data showing the developmental differences between juvenile and adult minds, including the ability of juveniles to change more readily than adults. (*Id.* at pp. 68-69.) *Graham* determined that a state, while not required to guarantee eventual freedom to a juvenile offender, must give such offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Id.* at p. 75.) A state is prohibited from making a judgment at the outset that a juvenile offender will never be fit to reenter society. (*Ibid.*)

Second, in *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*) the court held that the Eighth Amendment prohibits the imposition of a mandatory LWOP sentence on a juvenile offender even in a case of homicide. (*Miller, supra,* 132 S.Ct. at p. 2469.) *Miller* determined that the Eighth Amendment does not necessarily foreclose an LWOP sentence on a juvenile but the trial court, before imposing such a sentence, must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Miller, supra,* 132 S.Ct. at

6.

p. 2469.) *Miller* sets forth a list of factors for the trial court to determine before imposing an LWOP sentence, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; whether "the family and home environment that surrounds" the juvenile is "brutal and dysfunctional"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; and "the possibility of rehabilitation." (*Miller, supra,* 132 S.Ct. at p. 2468.) LWOP may then be sentenced if the court, after considering all the relevant information, determines the case involves one of the "'rare juvenile offender[s] whose crime reflects irreparable corruption.' [Citations.]" (*Miller, supra,* 132 S.Ct. at p. 2469.)

Finally, in *Caballero, supra,* 55 Cal.4th 262, our Supreme Court reviewed *Graham* and *Miller* and held the Eighth Amendment's prohibition against cruel and unusual punishment is violated in a nonhomicide case when a juvenile offender is sentenced to a term of years with a parole eligibility date that falls outside the juvenile's natural life expectancy. (*Caballero, supra,* at p. 268.) In *Caballero*, the juvenile defendant received a 110-year-to-life sentence after he was convicted of three counts of attempted murder. The *Caballero* court concluded the sentence was the "functional equivalent" of LWOP and it reversed because the Eighth Amendment was violated. (*Caballero, supra*, at pp. 267-268.)

In reversing, *Caballero* emphasized *Graham*'s requirement that a state must provide a juvenile offender with a "'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'" within his or her expected lifetime. (*Caballero, supra,* 55 Cal.4th at p. 269.) The state may not deprive juvenile offenders "at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future." (*Id.* at p. 268.) Our Supreme Court stated "the sentencing court must consider all mitigating circumstances attendant in the juvenile's crime and life, including but not limited to his or her chronological age at the time of the crime,

7.

whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development, so that it can impose a time when the juvenile offender will be able to seek parole from the [Board]. The [Board] will then determine whether the juvenile offender must be released from prison 'based on demonstrated maturity and rehabilitation.' [Citation.]" (*Id.* at pp. 268-269.)

*Caballero*, however, neither analyzed nor determined how much potential life expectancy a state must provide a juvenile offender beyond the initial parole eligibility hearing date in order to satisfy the Eighth Amendment.

## II. *Franklin* **Found No Eighth Amendment Violation.**

In *Franklin*, the defendant was 16 years old when he shot and killed another teenager. He was convicted of first degree murder and a firearm-discharge enhancement was found true. He received two consecutive 25-year-to-life sentences in prison. (*Franklin, supra,* 63 Cal.4th at p. 268.) Our Supreme Court granted review to answer two questions: "Does … section 3051 moot [the defendant's] constitutional challenge to his sentence by requiring that he receive a parole hearing during his 25th year of incarceration? If not, then does the state's sentencing scheme, which required the trial court to sentence [the defendant] to 50 years to life in prison for his crimes, violate *Miller*'s prohibition against mandatory LWOP sentences for juveniles?" (*Ibid.*) *Franklin* held that sections 3051 and 4801 mooted the defendant's constitutional claim, making it unnecessary to answer the second question. (*Ibid.*)

Senate Bill No. 260 became effective January 1, 2014, and it added sections 3051, 3046, subdivision (c), and 4801, subdivision (c), to the Penal Code. (*Franklin, supra,* 63 Cal.4th at p. 276.) "[T]he Legislature passed Senate Bill No. 260 explicitly to bring juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero*." (*Franklin, supra,* 63 Cal.4th at p. 277.)

Section 3051 provides that "any prisoner who was under 23 years of age at the time of his or her controlling offense" shall be afforded a "youth offender parole hearing"

8.

before the Board. (§ 3051, subd. (a)(1).) Juvenile offenders with determinate sentences of any length shall receive a hearing during the 15th year of incarceration. (*Id.*, subd. (b)(1).) Those sentenced to life terms of less than 25 years to life shall receive a hearing during the 20th year of incarceration. (*Id.*, subd. (b)(2).) Those sentenced to an indeterminate base term of 25 years to life will receive a hearing during the 25th year of incarceration.[2] (§ 3051, subd. (b)(3).) The hearing "shall provide for a meaningful opportunity" for the former juvenile defendant to obtain release. (*Id.*, subd. (e).) When considering a juvenile offender's parole suitability, the Board is to give "great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c), see also § 3051, subd. (f)(1).)

"Section 3051 thus reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole. Apart from the categories of offenders expressly excluded by the statute, section 3051 provides all juvenile offenders with a parole hearing during or before their 25th year of incarceration. The statute establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' (Stats. 2013, ch. 312, § 1) so that he or she may have 'a meaningful opportunity to obtain release' (§ 3051, subd. (e))." (*Franklin, supra,* 63 Cal.4th at p. 278.)

After reviewing the relevant law, *Franklin* held that the combined operation of Senate Bill No. 260 gave the defendant a meaningful opportunity for release, and the defendant's sentence was neither LWOP nor its functional equivalent. (*Franklin, supra,*

---

[2] Section 3051 does not apply to certain limited inapplicable exceptions, including sentencing pursuant to section 1170.12, subdivisions (b) to (i), inclusive, of section 667, or section 667.61, or where the juvenile was sentenced to life in prison without the possibility of parole. (§ 3051, subd. (h).)

63 Cal.4th at pp. 279-280.) Accordingly, no *Miller* claim was present. (*Franklin, supra,* at p. 280.)

Here, in the prior briefing before us, the parties did not agree on appellant's "normal life expectancy" and they disputed whether or not his current sentence is the functional equivalent of LWOP. Appellant cited data from, and requested that we take judicial notice of, the Centers for Disease Control and Prevention, National Vital Statistics Reports, showing his shortest life expectancy of 71.9 years when measured from his birth year. He noted other longer life expectancies exist depending on how the data is viewed. He argued he will not be eligible for parole until he is 72 years old (17 + 55), and further contended reaching that age may be optimistic when the health hazards of prison life are considered.

Respondent asserted we should disregard appellant's life expectancy data on appeal because it was outside the appellate record, was not considered by the trial court, and is contrary to the life expectancy of 78.9 years that the parties submitted to the trial court at the resentencing hearing. In any event, respondent contended appellant's current sentence is not a de facto LWOP because his minimum parole eligibility date falls within his natural life expectancy.

In light of *Franklin*, these disputed issues are no longer relevant to a material issue. As such, we deny appellant's request to take judicial notice of the National Vital Statistics Reports, United States Life Tables, attached to his opening brief as exhibits A and B. (Evid. Code, § 452; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue."].) Pursuant to the holding in *Franklin*, appellant's sentence is neither LWOP nor its functional equivalent regardless of his disputed life expectancy because he has "a meaningful opportunity for release during his 25th year of incarceration." (*Franklin, supra,* 63 Cal.4th at pp. 279-280.) Accordingly, appellant's constitutional claim is moot. (*Franklin, supra,* at pp. 268, 279-280.)

10.

## III.     We Remand The Matter To Ensure A Complete Record.

As a class, juveniles are " 'constitutionally different from adults' due to 'distinctive attributes of youth' that 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.' " (*Franklin, supra,* 63 Cal.4th at p. 283, quoting *Miller, supra,* 567 U.S. at p. ___ [132 S.Ct. at p. 2458].) "Among these 'hallmark features' of youth are 'immaturity, impetuosity, and failure to appreciate risks and consequences,' as well as the capacity for growth and change." (*Franklin, supra,* 63 Cal.4th at p. 283, quoting *Miller, supra,* 567 U.S. at p. ___ [132 S.Ct. at p. 2468].)

Senate Bill No. 260 contemplated "that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration.  For example, section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime … may submit statements for review by the board.'  Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Franklin, supra,* 63 Cal.4th at pp. 283-284, quoting § 3051, subd. (f)(2).)  "In addition, section 3051, subdivision (f)(1) provides that any 'psychological evaluations and risk assessment instruments' used by the Board in assessing growth and maturity 'shall take into consideration … any subsequent growth and increased maturity of the individual.'  Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender when he was a juvenile." (*Franklin, supra,* 63 Cal.4th at p. 284, quoting § 3051, subd. (f)(1).)  At a juvenile's parole eligibility hearing, the Board is to give "great weight to the diminished culpability of juveniles as compared to adults,

11.

the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)

In *Franklin*, the Supreme Court determined it was unclear whether the defendant "had sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Franklin, supra,* 63 Cal.4th at p. 284.) The defendant had been sentenced in 2011, before *Miller* was decided and before enactment of Senate Bill No. 260. (*Franklin, supra,* 63 Cal.4th at p. 282.) The trial court admitted very little materials in mitigation because it recognized a lack of discretion in sentencing. (*Id.* at pp. 282-283.) As such, *Franklin* remanded the matter so the trial court could determine whether the defendant "was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Id.* at p. 284.) The Supreme Court noted the defendant need not be resentenced and his two consecutive 25-year-to-life sentences remained valid. (*Ibid.*)

Here, appellant was resentenced in 2013 before enactment of Senate Bill No. 260. During the 2013 resentencing, the parties focused on the appropriate length of sentence, and whether the court's indicated sentence was constitutional or not. Given the change in the legal landscape regarding juvenile sentencing, it is unclear whether appellant "had sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Franklin, supra,* 63 Cal.4th at p. 284.) As such, consistent with *Franklin*, we remand the matter so the trial court can determine whether appellant "was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Id.* at p. 284.) Appellant need not be resentenced and his sentence of 55 years to life remains valid.

*Franklin* set forth the following guidelines upon remand. "If the trial court determines that [the defendant] did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of

evidence.  [The defendant] may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors.  The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' [citation]."  (*Franklin, supra,* 63 Cal.4th at p. 284.)

## DISPOSITION

The judgment is affirmed.  The matter is remanded to the trial court for the limited purpose of determining, consistent with this opinion and *Franklin, supra,* 63 Cal.4th at pages 268-269, 283-284, whether appellant was afforded an adequate opportunity to make a record of information that will be relevant to the Board as it fulfills its statutory obligations under sections 3051 and 4801.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

KANE, J.


_____

POOCHIGIAN, J.

13.