Filed 4/22/21  P. v. Jones CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B304692 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.YA037935) |
| v. | |
| MARCUS JONES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Reversed and remanded with directions.

Tracy Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Marcus Jones challenges the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1] We agree that the trial court erred by making factual findings prior to issuing an order to show cause (OSC).  The matter is remanded for issuance of an OSC and further proceedings consistent with section 1170.95, subdivision (d). Respondent's request for judicial notice is denied.

## BACKGROUND

### I.     Underlying Conviction[2]

A.     *Prosecution Evidence*

On May 23, 1996, an employee of the Park Avenue Market in Inglewood saw appellant and his cousin, Melvin Jones (Melvin), outside the store.  Appellant and Melvin put on facial coverings, and Melvin drew a handgun from his pants. As Melvin and appellant entered the store, the employee saw Melvin holding the gun and appellant walking toward the cash register. The employee heard something to the effect of, "Okay. This is a . . ." before he ran down the street for help. The employee heard a

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Appellant draws his lengthy statement of facts directly from the transcripts of his 2000 trial, which are in the appellate record, and criticizes respondent's "bare bones recitation" drawn from our prior opinion, *People v. Jones* (Sept. 25, 2001, B143098) [nonpub. opn.], which is also in the appellate record.  Because both the transcripts and our prior opinion are already in the appellate record, respondent's request for judicial notice of these documents and the remainder of the record of appellant's direct appeal is denied.  (See *People ex rel. Lockyer v. Shamrock Foods* (2000) 24 Cal.4th 415, 422-423, fn. 2.)  We note that appellant's recitation of the facts is materially similar to that in our prior opinion.  We draw our summary from both sources.

single gunshot, then saw appellant and Melvin run from the store about 30 seconds later.

The employee and two police officers who happened to be nearby pursued appellant and Melvin. Appellant and Melvin were apprehended minutes later at the top of a stairwell in an apartment complex. They were sweaty and breathing hard, and smelled of alcohol, but they did not appear intoxicated. Police officers retraced the route appellant and Melvin had taken and found a loaded gun, a bandanna and face mask, a glove, and a one dollar bill. When appellant was booked at the jail, police found two $5 bills in his left pants pocket and two $10 bills and a $1 bill in his right. The bills were crumpled.

The owner of the store, Won Hee Lee, died of a single gunshot wound to the head. Stippling marks on the wound indicated that the shot was fired from about six inches away. Forensics testing showed that the gun recovered by the police fired the fatal bullet. Both Melvin and appellant were found to have particles consistent with gunshot primer on their hands.

B.   *Defense Evidence*

Appellant testified that he and Melvin were 15 at the time of the incident. At school that day, Melvin twice mentioned wanting to do something to get money, which appellant understood to mean committing theft or robbery. Appellant ignored him, as Melvin had never done anything like that.

After school, appellant and Melvin played video games, drank vodka, and smoked marijuana. They later obtained and shared an additional pint of vodka. Appellant testified that he felt dizzy and drunk and vomited twice.

Melvin pulled a gun from his sock and said he wanted to rob Park Avenue Market. Appellant watched Melvin load and

3

cock the gun. Appellant said he did not want to participate in a robbery and tried to talk Melvin out of it. Eventually Melvin said he would do it alone and started walking away. Appellant joined Melvin, hoping to keep him from getting hurt or hurting anyone else.

When appellant and Melvin reached an alcove outside the store, Melvin put on a mask and a glove. Appellant put the glove Melvin offered him in his pocket, but tied his basketball bandanna around his face. Appellant stayed in the doorway of the store while Melvin went to the counter. Appellant heard Melvin say a couple words and then heard a gunshot; Melvin had shot Lee. Melvin reached over the counter and grabbed money from the register; appellant, who could not understand how Melvin could think about money after shooting someone, nevertheless accepted the money Melvin handed him, balled it up, and put it in his right pocket.

Appellant ran away from the scene with Melvin. While they were running, Melvin asked appellant for his bandanna, which appellant removed and handed to him. Appellant and Melvin ran to Melvin's father's apartment, outside of which they were apprehended shortly after they arrived.

After his arrest, appellant told a psychiatrist, "he 'did something stupid,' emptying the register and running out." Appellant admitted making the statement but said the "he" was referring to Melvin.

C. *Conviction and Sentence*

Appellant was charged with murder (§ 187, subd. (a)) and second degree robbery (§ 211). The information also alleged that

a principal was armed with a handgun (§ 12022, subd. (a)(1)).[3] Appellant and Melvin originally were tried together; Melvin was convicted of first degree murder, but a mistrial was declared as to appellant. At appellant's retrial, at which the prosecution advanced a felony murder theory, the jury found him guilty of first degree murder and second degree robbery, and found the enhancement true. The court sentenced appellant to 25 years to life for the murder and a consecutive term of one year for the enhancement; it stayed the sentence on the robbery conviction under section 654. We affirmed appellant's convictions and sentence on September 25, 2001.

Appellant was released from prison on parole in January 2019.

## II. Section 1170.95 Proceedings

On May 15, 2019, appellant, through counsel, filed a petition for resentencing pursuant to section 1170.95. In his petition, appellant asserted, *inter alia*, that a complaint was filed against him that permitted the prosecution to proceed under a felony murder theory; that he was convicted of first degree murder under the felony murder rule; that he could not now be convicted of first degree murder; that he was not the actual killer; that he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder; and that he was not a major participant in the felony and did not act with reckless indifference to human life during the course of the crime.

---

[3]The information further alleged a robbery-murder special circumstance (§ 190.2, subd. (a)(17)), but the word "stricken" is handwritten next to the allegation, and it does not appear to have been pursued at appellant's trial.

5

Appellant also stated that this court "specifically found that Mr. Jones did not personally kill the victim, that the victim was shot by Mr. Jones's co-defendant, and that Mr. Jones did not want to participate in the underlying robbery, tried to dissuade his co-defendant, and only accompanied his co-defendant because he hoped his presence would prevent anyone from getting hurt." "Based on the aforementioned," appellant asserted that he was entitled to resentencing under section 1170.95, subdivision (d)(2).[4]

On July 22, 2019, the trial court granted the prosecution's "second request for extension of time to file informal response" and continued the matter to October 28, 2019 "for further proceedings."

On October 17, the prosecutor filed a response to the petition. As relevant here,[5] the prosecution contended that appellant failed to prove his eligibility for resentencing because he was a major participant who acted with reckless indifference, even under the frameworks established by *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522

---

[4]Section 1170.95, subdivision (d)(2) states: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner."

[5]The prosecution also argued that section 1170.95 was unconstitutional. The trial court did not rule on this argument, which is not at issue in this appeal.

(*Clark*). The prosecution attached our prior opinion to its brief, as well as the transcripts from appellant's trial.

On October 23, 2019, the court granted appellant's request for additional time and ordered "petitioner's hearing" continued to January 22, 2020. The prosecution notified the court on October 28, 2019 that it was unavailable on January 22, 2020; the court continued the matter to January 23, 2020 "for argument pursuant to Penal Code section 1170.95" and ordered appellant to appear on that date.

Appellant filed a reply in support of his petition on December 20, 2019. The reply included a statement of facts drawn from exhibits accompanying the petition, including a Supreme Court opinion addressing a writ in the matter (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667); our prior opinion; a report documenting a July 3, 1996 psychiatric evaluation; a "follow up" police report of the incident; a probation report dated July 11, 2000; and a transcript of a surreptitiously recorded conversation appellant and Melvin had while in the back of a police car on the day of the incident. Several of these documents, most notably the transcript, were not admitted at appellant's trial or contained in the record of conviction. Citing section 1170.95 subdivision (d)(3),[6] appellant argued that he was entitled

---

[6]Section 1170.95, subdivision (d)(3) describes the procedures the court must follow after issuing an order to show cause. Specifically, it provides: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be

7

to resentencing because "[t]he People failed to prove *beyond a reasonable doubt* that Mr. Jones was *both* a major participant *and* acted with reckless indifference to human life."  Using the frameworks established by *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, appellant further contended that he was not a major participant and did not act with reckless indifference to human life.

The court heard the matter on January 23, 2020; appellant was present with his counsel.  At the hearing, appellant's counsel opened his argument by stating that section 1170.95 "subsection (d)(3) clearly puts the burden of proof on the prosecution to prove beyond a reasonable doubt that Mr. Jones was both a major participant and acting in reckless indifference."  He then reserved the remainder of his argument for rebuttal.  The prosecutor then asserted, "That's correct, Your Honor," before arguing that appellant was a major participant who acted with reckless indifference.  During the prosecutor's argument, the court observed that "the facts are obviously everything in this case" and referred to the transcript appellant submitted with his reply, asking, "wasn't there a surreptitious tape made of them in the back of the patrol car?"  Appellant responded to the prosecutor's argument by arguing that he was not a major participant and did not act with reckless indifference.  Appellant notes this several times, seemingly implying it is relevant.

After appellant's argument, the court stated that it "read carefully in [*sic*] great interest the transcript of the conversation these two 15 year olds [*sic*] had in the police car immediately

---

resentenced on the remaining charges.  The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."

8

after this robbery."  It remarked, "if I'm reading [the transcript] correctly, [appellant] is lamenting the fact that in this plan beforehand, he was urging his cousin to give him the gun. He was supposed to have the gun in the first place.  That doesn't sound to me factually as if - - well, the words speak for themselves."

The court then orally denied the motion:  "I think that factually it's pretty clear this motion must be denied.  Mr. Marcus Jones was both a major participant, and he is one who acted with complete reckless indifference to human life.  He planned this crime together with his 15-year-old cousin who was like his brother.  He robbed the victim together with Melvin Jones.  He actually took the money.  He actually watched as his cousin, quote, blasted - - I won't use the profanities.  But he shot the victim in the face. And he was well aware and knew that. Despite that knowledge, he fled together with his cousin.  He disposed of evidence with his cousin.  And again, they fled together.  They didn't go separate directions.  He didn't run from his cousin as if he was shocked, appalled, upset, afraid of what he had done.  He was with full knowledge and participation of both the preplanning of an armed robbery, participation in a planned armed robbery.  He fled with him to the same location disposing of evidence.  He stayed together with him afterwards. He sat in the patrol car with him afterwards lamenting their future and saying, no matter what we're in this together.  We're in this together for life.  They were together the whole way.  He was a major participant, and he acted with reckless disregard.  The language and discussion between these two 15-year-old men after they had full knowledge they shot a man in the face is disgusting and disturbing and shows nothing but the fact that they're hardened, vicious, and violent killers.  So the motion is denied. . .

.  I will not even be addressing the constitutionality of this section at all."

The minute order entered after the hearing stated that the matter had been "called for hearing pursuant to Penal Code 1170.95(a)."  It further stated: "Court finds defendant was a major participate [*sic*] and watch [*sic*] his cousin shot [*sic*] the victim and both defendant [*sic*] fled together and disposed of the evidence.  Defendant Marcus Jones had full knowledge and participation of the crime.  It was planed [*sic*] with his cousin and he took money.  Defendant's [*sic*] was reckless and with disregard [*sic*] of the victim.  Petition pursuant to Penal Code section 1170.95(a) denied."

Appellant timely appealed.

## DISCUSSION

Appellant raises two issues. First, he contends the trial court erred by making factual findings at the prima facie stage of the case.  Second, he contends the trial court erred in relying on evidence outside the record of conviction—the transcript appellant provided—to deny his petition.  Respondent argues both contentions are forfeited due to appellant's failure to object below, and lack merit in any event because the parties "effectively skipped the prima facie stage and litigated the case at the post-Order-To-Show-Cause evidentiary hearing stage."

We proceed to the merits of appellant's first argument, conclude that the proceedings were at the prima facie stage, and hold that the court accordingly erred by making factual findings that appellant was a major participant who acted with reckless indifference.  We need not and do not address appellant's second argument.

10

## I.  Governing Law

In 2018, the Legislature enacted Senate Bill No. 1437 (SB 1437), the primary purpose of which is to align a person's culpability for murder with his or her own actions and subjective intent.  (See Stats. 2018, ch. 1015, § 1, subd. (g).)  To effectuate that purpose, SB 1437 amended sections 188 and 189.  As amended, section 188, subdivision (a)(3) now provides that "to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  Section 189 now provides that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a major participant in the underlying felony [who] acted with reckless indifference to human life."  (§ 189, subds. (e)(1)-(3).)  The effect of these changes was to restrict the application of the felony murder rule and the natural and probable consequences doctrine as applied to murder.  (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.)  "Felony murder and aiding and abetting a murder remain crimes, but to be convicted of murder it isn't enough to participate in a felony that results in a death.  Now, a person so accused must have killed the victim, aided the person who did kill the victim with the intent to kill [them], or acted as a major participant in the felony with reckless indifference to human life."  (*People v. Johns* (2020) 50 Cal.App.5th 46, 54.)

SB 1437 also added section 1170.95 to the Penal Code.  Section 1170.95 permits a person convicted of murder on a

11

charging document that allowed the prosecution to argue felony murder or the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and resentence on any remaining counts if the person could not be convicted of murder under sections 188 and 189 as amended by SB 1437. (§ 1170.95, subd. (a).)  A petition for relief under section 1170.95 must include:  "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a).  [¶] (B) The superior court case number and year of the petitioner's conviction.  [¶] (C) Whether the petitioner requests the appointment of counsel."  (§ 1170.95, subd. (b)(1).)  If any of this information is missing "and cannot be readily ascertained by the court," the court may deny the petition without prejudice.  (§ 1170.95, subd. (b)(2).)

If the petition contains the required information, section 1170.95, subdivision (c) provides that "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)  A petitioner makes a prima facie showing if his or her assertions are not conclusively refuted by facts in the record as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 980 (*Drayton*); see also *People v. Duchine* (2021) 60 Cal.App.5th 798 (*Duchine*);

12

but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, rev. granted Feb. 10, 2021, S265692.)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*), rev. granted, S260493, Mar. 18, 2020.) If the prosecution does not stipulate to vacating the conviction and resentencing the petitioner prior to the hearing (§ 1170.95, subd. (d)(2)), it then bears the burden of proving "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecution may offer new evidence in addition to that within the record of conviction to carry this burden; the petitioner similarly may offer new evidence at the hearing. (*Ibid.*) If the prosecution prevails, the petition is denied. "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

## II. Analysis

The parties disagree about the phase to which the proceedings here had progressed. Appellant contends they were at the prima facie stage described by section 1170.95, subdivision (c), while respondent maintains they had progressed to a "de facto post-OSC hearing under section 1170.95, subdivision (d)." Respondent also contends appellant forfeited this issue and "invited the court to make the necessary findings" by "arguing directly that appellant was not a substantial participant who acted with reckless disregard."

13

We decline to find forfeiture. Both parties directly and extensively argued about whether appellant was a major participant who acted with reckless disregard. In accordance with the requirements of section 1170.95, subdivisions (a)(3) and (b)(1)(A), appellant's petition asserted that he was not a major participant and did not act with reckless disregard for human life. The sole substantive argument the prosecution made in response was that appellant was a major participant who acted with reckless indifference. Appellant would have been remiss had he not in reply "argu[ed] directly that appellant was not a substantial participant who acted with reckless disregard," particularly where the law in the area was (and in many respects remains) largely unsettled. Indeed, *Drayton*, *supra*, 47 Cal.App.5th 965 had not yet been decided, and case law in the area continues to evolve.

We agree with *Drayton* and *Duchine*, *supra*, 60 Cal.App.5th 798, that "the prima facie showing the defendant must make is that he did not, in fact, act or harbor the mental state required, for a murder conviction under current law." (*Duchine, supra*, at p. 815.) "[W]hen assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit actual assertions that are untrue as a matter of law. . . ." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) "The record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*Duchine*, *supra*, at p. 815.) "[T]he time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the

14

prima facie stage, at least where the record is not dispositive on the factual issues." (*Ibid.*; see also *Drayton, supra,* 47 Cal.App.5th at pp. 980-982.)

Both parties appear to accept this framework; respondent even acknowledges that appellant's claim of "improper finding of fact" would be "valid . . . if the case had been disposed of at the prima facie stage of subdivision (c)." We conclude the case was in fact at that stage.

Appellant filed his petition; the prosecution filed a response; and appellant filed a reply. These events track those listed in section 1170.95, subdivisions (a), (b), and (c). Subdivision (a) permits the filing of a petition; subdivision (b) enumerates what the petition "shall include"; and subdivision (c) sets forth the procedure for review. "The court shall review the petition and determine if the petitioner has made a prima facie showing . . . . The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served." (§ 1170.95, subd. (c).)

Once these events have occurred, which they did here, the court must determine whether the petitioner has made the prima facie showing. (See § 1170.95, subd. (c).) "[S]ubdivision (c) does not define the process by which the court is to make this threshold determination," *Verdugo, supra,* 44 Cal.App.5th at p. 329, but in practice many courts do so orally after hearing oral argument from the parties. The record indicates that is what the court did here. A minute order issued October 28, 2019 states that the court continued the matter to January 23, 2020 "for argument pursuant to Penal Code section 1170.95." At that argument, the court gave no indication that it had already

15

determined whether appellant had made a prima facie showing. It did not issue an OSC.  (§ 1170.95, subd. (c).) Instead, it heard argument from both parties, during which neither side presented additional evidence.  The court then made numerous factual determinations, issued a minute order stating that the case had been called for an "1170.95(a) PC hearing on petn," and denied the petition.  The court did not state, either orally or in its minute order, that the facts it found had been proven beyond a reasonable doubt.

The court at no time gave the parties any indication that the matter had advanced to the section 1170.95, subdivision (d) stage.  Respondent suggests such an indication was unnecessary, because appellant "invoked the prosecution burden of proving beyond a reasonable doubt his ineligibility for resentencing, a subject matter strictly within the realm of a subdivision (d), hearing."  This is simply a restatement of the forfeiture argument, and we again reject it.  Without an OSC or some other signal from the court, appellant had no way of knowing that the "argument" for which he was appearing was in fact the hearing at which he would have the opportunity to present additional evidence and hold the prosecution to its burden of proof beyond a reasonable doubt.  Indeed, the prosecution similarly lacked notice and may have presented its case differently had it known the argument was its final opportunity to address the court.

As the *Drayton* court stated:  "At this stage of the petition review process, governed by section 1170.95(c), the trial court should not have engaged in . . . factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d).  Further, the *Banks* test, which governs the

inquiry whether the defendant was a major participant in a felony necessarily requires the weighing of facts and drawing inferences. [Citation.] The question whether [appellant] acted with reckless indifference is a similarly multifaceted inquiry. [Citation.] In making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true." (*Drayton*, *supra*, 47 Cal.App.5th at p. 982, footnotes omitted.)

Appellant's petition, which was prepared by counsel, facially met the requirements of section 1170.95, subdivision (b) and did not state facts that foreclosed his eligibility for relief as a matter of law. He accordingly was entitled to an OSC and a hearing that explicitly met the requirements of section 1170.95, subdivision (d). The order is reversed and remanded with directions to provide appellant with those things. We express no opinion as to the merits of appellant's petition or either party's arguments regarding the substance of the court's factual findings.

Because we conclude the court erred by making factual findings at the prima facie stage, we need not consider the merits of appellant's strained argument that the court committed reversible error by considering a document that appellant provided.

## DISPOSITION

The order denying appellant's section 1170.95 petition is reversed. The matter is remanded with directions to issue an order to show cause and proceed consistently with section 1170.95, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

17

COLLINS, J.

We concur:

MANELLA, P. J.

CURREY, J.